USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/13/09

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK

                    Plaintiff,
                                                07 Civ. 1755 (DAB)
          -against-                             MEMORANDUM & ORDER

CHEROMIN, INC., CHEROMINO CONTROL
GROUP, LLC and DRAGOSUS RADOJEVIC

                    Defendants.
------------------------------------------X
```

DEBORAH A. BATTS, United States District Judge.

Plaintiff Mason Tenders District Council of Greater New York ("MTDC") brings suit against Cheromin, Inc ("Cheromin"), Cheromino Control Group, L.L.C. ("Cheromino"), (the "Corporate Defendants") and Dragoljub Radojeciv ("Radojevic")[1] for violations of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185. Plaintiff alleges that Defendants violated the LMRA under both 'single employer' and 'alter ego' theories of liability by breaching a collective bargaining agreement between MTDC and Cheromin. Plaintiff also alleges that Defendant Radojevic is personally liable for these violations because he executed the agreement in his individual capacity.

---

[1] Although the Complaint states Defendant Radojeciv's first name as "Dragosus," Defendant Radojeciv avers that the correct spelling is "Dragoljub." (Radojeciv Aff. ¶ 1 n.1).

I. BACKGROUND

Plaintiff MTDC is a labor organization with its principal place of business in the state of New York. (Compl. ¶ 2). Defendants Cheromin and Cheromino are both corporations with their principal places of businesses in the state of New York. (Compl. ¶¶ 3-4). Defendant Radojevic is the owner of Cheromino and the Vice President of Cheromin. (Compl. ¶ 5)

On or around July 1, 2004, Radojevic and the MTDC executed a letter agreement, (Plt's Mem. Of Law at Ex. A (the "Letter Agreement")),[2] binding the parties to the terms of a pre-existing collective bargaining agreement between the MTDC and the Environmental Contractors Association ("ECA"). (Compl. ¶ 8). The Letter Agreement also stipulated, however, that if Cheromin was not admitted to the ECA within 90 days of its execution, then Cheromin's relationship with the MTDC would instead be governed by the terms of the 2003-2007 MTDC Independent Collective bargaining agreement "(the "MTDC Agreement"). (Compl. ¶¶ 8-9).

---

[2] In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Zdenek Marek v. Old Navy (Apparel) Inc., 348 F.Supp.2d 275, 279 (S.D.N.Y. 2004) (citing Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (internal quotations omitted)). Here, the Letter Agreement is integral to Plaintiff's claims and is incorporated by reference at paragraph 8 of the Complaint.

Furthermore, because the Letter Agreement stated that the signing officer for Cheromin was signing "in his/her representative and personal capacities," and that the "referenced officer" was binding himself in his "individual capacity," Plaintiff contends that Defendant Radojevic is personally liable for the Corporate Defendants' alleged violations of the LMRA.  (Compl. ¶ 8; Plt's Mem. Of Law at Ex. A).

Because Cheromin did not obtain membership in the ECA within 90 days, Cheromin and the MTDC have been bound by the terms of the MTDC Agreement since October 1, 2004.  (Compl. ¶ 9).  The terms of the MTDC Agreement required Cheromin to provide the MTDC with 24 hours notice prior to commencing any project within the agreement's scope, to accept a shop steward appointed by the MTDC as the second employee on any such project, and to accept employees referred by the MTDC sufficient to maintain a 50:50 ratio of MTDC to non-MTDC employees on any such project.  (Compl. ¶ 10).  The MTDC Agreement also required minimum wage rates and various fringe benefits for employees working under the agreement.  (Compl. ¶ 10).

Plaintiff alleges that on or about May of 2006 Cheromin, then owing overdue benefits to its employees under the MTDC Agreement, began to utilize Cheromino to perform work covered by the scope of the MTDC Agreement, despite the fact that Cheromino

was then an unregistered corporation in New York. (Compl. ¶¶ 14-15). Plaintiff alleges that Defendants used Cheromino to complete additional projects while avoiding Cheromin's labor obligations under the MTDC Agreement. (Compl. ¶¶ 14-16, 23, 25). In support of these allegations, Plaintiff contends that the Corporate Defendants share common business purposes, a common office and phone line, as well as the same client-based, staff, assets, and other business relations. (Compl. ¶¶ 17-18, 21). Additionally, Radojevic's relative, Minnie Radojevic, holds herself out as the President of Cheromin. (Compl. ¶ 20).

## II. DISCUSSION

### A. Legal Standard

For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In other words, a plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007). "[A] plaintiff's obligation to

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65 (internal quotation marks omitted).  In deciding a motion to dismiss, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (citation omitted). However, "general, conclusory allegations need not be credited ... when they are belied by more specific allegations of the complaint." Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany, No. 05 Civ. 10669, 2007 WL 2822214, at *7 (S.D.N.Y. Sept. 27, 2007).

B.   Single Employer Claim

"[A] collective bargaining agreement may be enforced against non-signatory employers if the employers constitute a "single employer" and if the employees of the companies constitute a single appropriate bargaining unit." Brown v. Sandimo Materials, 250 F.3d 120, 128 n.2 (2d. Cir. 2001) (citing Lihli Fashions Corp v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996)).  In determining whether a group of companies is a "single integrated enterprise"

constituting a "single employer" the Second Circuit looks to four factors, "none of which is controlling and not all of which need be present: "[1] interrelation of operations; [2] common management; [3] centralized control of labor functions; and [4] common ownership. Family connections and the common use of facilities and equipment are also relevant." Id. (citing Lihli Fashions Corp., 80 F.3d at 747.)

Here, Plaintiff has alleged sufficient allegations to make out a plausible claim for single employer liability. First, Cheromin and Cheromino share the same offices in Passaic, New Jersey, as well as the same phone line. (Compl. ¶ 18) In addition, Plaintiff alleges that the two corporations do not maintain a client-base, staff, assets, or other business relations that are independent of each other. (Compl. ¶ 21) Therefore Plaintiff has pled factors one and three by alleging that Cheromin and Cheromino share operations and labor functions.[3] Clearly Plaintiff has also pled the common use of facilities and equipment. Furthermore, the Complaint alleges that Radojevic is both Vice President of Cheromin and an owner

---

[3] Defendants' contention that Cheromino participates in the separate and distinct business of demolition and site contracting is inconsequential at the Motion to Dismiss stage, as all facts stated in the Complaint are assumed to be true. Roth, 489 F.3d at 510.

6

and principal officer of Cheromino, thus satisfying the second factor. (Compl. ¶ 19). Finally, although the Complaint does not allege common ownership of both corporations by Radojevic himself, it does allege Radojevic's ownership of Cheromino and both he and his relative, Minnie's role in the management of Cheromin. (Compl. ¶¶ 5, 19-20).

Because Plaintiff has pled sufficient facts to make a "single employer" theory of liability plausible, Defendant's Motion to Dismiss that claim is DENIED.

C.   Alter Ego Claim

While identical to the "single employer" doctrine in terms of effect, the alter ego doctrine is conceptually distinct and is present where "two enterprises have substantially identical management, business purpose, operations, equipment, customers, supervision, and ownership." Brown, 250 F.3d at 128 n.3 (citing Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking, 944 F.2d 1037, 1046 (2d Cir. 1991)).

Here, Plaintiff alleges in its Complaint that the Corporate Defendants share management, (Compl. ¶ 19), business purpose, (Compl. ¶ 17), operations, (Compl. ¶¶ 18, 21), equipment, (Compl. ¶ 18), customers, (Compl. ¶ 21), supervision, (Compl. ¶¶ 19, 21), and although Plaintiff does not make allegations as to the

ownership of Cheromin, Radojevic's ownership of Cheromino, along with his position as Vice President of Cheromin and his relative Minnie Radojevic's position as President of Cheromin demonstrate substantial overlap of control among the two corporations. (Compl. ¶¶ 19-20). See U.S. v. Evseroff, 270 Fed.Appx. 75, 77 (2d Cir. 2008) ("[T]he critical issue in resolving a[n] . . . alter ego claim is not motive, but control, and whether the defendant used this control to commit a fraud . . ." (emphasis added)).

Because Plaintiff has pled sufficient facts to make a "alter ego" theory of liability plausible, Defendant's Motion to Dismiss that claim is DENIED.


D.   Individual Claim Against Radojevic

Although Federal law governs disputes arising under Section 301 of the LMRA, "state law, if compatible with the purpose of [the LMRA], may be resorted to in order to find the rule that will best effectuate the federal policy." Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co., 301 F.3d 50, 53 (2d Cir. 2002)(citing Lerner v. Amalgamated Clothing & Textile Workers Union, 938, F.2d 2, 5 (2d Cir. 1991)). Accordingly, Courts in this jurisdiction resort to New York law to resolve the question of whether a collective bargaining agreement imposes

8

personal liability on a signatory.  Id. (citing Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, 35 F.3d 29, 35 (2d Cir. 1994)).

In order to impose personal liability on a signatory to a collective bargaining agreement under New York law, there must be "clear and explicit evidence of the defendant's intent to add personal liability to the liability of the entity"  Id. (citing Lerner, 938 F.2d at 5.)  Factors that are considered in making this determination include: "(1) the contract's length, (2) the location of the liability provision relative to the signature line, (3) the presence of the name of the signatory in the contract itself, (4) the nature of the negotiations leading to the contract, and (5) the signatory's role in the corporation."  Id. (citing Lollo, 35 F.3d at 35.)

Here, the second and fifth factors clearly weigh in favor of a finding of personal liability.  The two provisions stating that Radojevic was signing in his "individual" and "personal" capacity are located almost immediately above the signature line.  (Plt's Mem. Of Law at Ex. A).  Furthermore, Radojevic is the Vice President of Cheromin, and therefore his significant "role in the corporation weighs against him."  Mason Tenders Dist. Council Welfare Fund v. American Lath & Plaster Co., 2007 WL 2710427 at *3 (S.D.N.Y. Sep. 14, 2007).  As to the third factor, although

9

Radojevic's name was not typed into the text of the agreement itself, it was hand-written into the text above his signature and immediately after the text: "Name of Individual." (Plt's Mem. Of Law at Ex. A); see also, Lollo, 35 F.3d at 35 ("[A]lthough Defendant's] name was not included in the text of the agreement, it was written into the contract above the signature line, and it is undisputed that [Defendant] had the authority to sign on the behalf of the company as its President and on behalf of himself.").

The first and fourth factors, however, are indeterminate on the record before the Court on the Motion to Dismiss. Although the Letter Agreement was merely one page, the underlying MTDC Agreement to which Radojevic allegedly bound himself by signing the Letter Agreement is not before the Court, and thus the Court is unable to consider its length as one of the factors. Finally, the nature of the negotiations leading to the contract are not alleged in the Complaint and thus are also not before the Court at this time. Thus, at this stage of the proceedings, where three of the factors weigh in favor of personal liability, and where the remaining factors require additional discovery, the Court will not set aside Plaintiff's allegations of individual liability as to Defendant Radojevic. See, e.g., United Natural Foods, Inc. v. Burgess, 488 F.Supp.2d 384, 390 (S.D.N.Y. 2007)

(finding a genuine issue of material fact as to the individual Defendant's intent to bind himself personally to an agreement where some, but "[n]ot all evidence points toward an intent to be individually bound."); American Lath & Plaster Co., 2007 WL 2710427 at **2-3 (noting in distinguishing Thomsen Const. Co., which was decided after a bench trial, that where the other factors were in conflict, the fact that "the parties are not in agreement about the nature of the negotiations" means that "the facts have not yet been developed through discovery, much less through trial"); Jacobson v. Telvida, Inc., 2005 WL 3609101 * (E.D.N.Y. Aug. 10, 2005) (noting that neither Lerner nor Thomsen Const. Co., both of which upheld findings that corporate officers did not intend to personally bind themselves, were decided on a motion to dismiss pursuant to Rule 12(b)(6), and thus were distinguishable); id. (denying motion to dismiss against individual defendant despite the fact that three of the five factors weighed against finding defendant personally liable).

Because Plaintiff has pled sufficient facts to make a claim for personal liability plausible, Defendant's Motion to Dismiss that claim is DENIED.

11

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is DENIED in its entirety. As an Answer has previously been filed in this matter, a Rule 16 conference shall be held on May 1, 2009 at 10:30 AM in Courtroom 24B.

SO ORDERED.

Dated:   New York, New York
         April 14, 2009

*Deborah A. Batts*
Deborah A. Batts
United States District Judge